# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

————————————————————x
)
In Re Federal National Mortgage Association ) Consolidated Civil Action No.
Securities, Derivative and "ERISA" Litigation ) 1:04-cv-01784 (RJL)
)
)
———————————————————— )
)
In re Fannie Mae ERISA Litigation )
)
)
)
)
)
)
————————————————————x

**MEMORANDUM OF LAW IN SUPPORT OF NAMED PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AND CERTIFICATION
OF SETTLEMENT CLASS AND LEAD COUNSEL'S REQUEST FOR AN AWARD OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,
UAND CASE CONTRIBUTION AWARDS FOR NAMED PLAINTIFFS**

**HARWOOD FEFFER LLP**
Robert I. Harwood
Samuel K. Rosen
488 Madison Avenue, 8th Floor
New York, NY 10022
Telephone: 212-935-7400
Facsimile: 212-753-3630

*Lead Counsel for ERISA Plaintiffs*

**Table Of Contents**

**Page**

Table Of Authorities .................................................................................................. iii

I.      INTRODUCTION .................................................................................1

PROCEDURAL HISTORY.........................................................................................6

ARGUMENT .................................................................................................................8

I.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
ADEQUATE AND SHOULD BE APPROVED BY THE COURT..................................8

      A.      The Stage Of The Proceedings And The Complexity,
Expense, And Likely Duration Of The Action All
Favor Approval Of This Settlement..........................................................9

      B.      The Risks Of Establishing Liability And Damages,
And The Range Of Reasonableness Of The Settlement
In Relation To The Facts Of The Case, Favor Approval Of The Settlement .......13

      C.      The Reaction Of The Class To The Settlement Favors Approval ........................18

      D.      The Settlement Was The Product Of Arms'-Length Negotiations
and Recommended By Experienced Counsel .......................................................18

      E.      The Settlement Is Being Thoroughly Vetted By An Independent Fiduciary.........19

II.      THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 .......20

      A.      The Proposed Settlement Class Satisfies The Requirements Of Rule 23(a) .........20

            1.      The Settlement Class is so Numerous that
Joinder of All Members is Impracticable...................................................20

            2.      Common Questions of Law and Fact Exist
as to Each Member of the Settlement Class...............................................21

            3.      Named Plaintiffs' Claims Are Typical of Those of the Class ..................21

            4.      Named Plaintiffs Will Fairly and Adequately
Represent the Settlement Class.................................................................22

            5.      The Class May Be Properly Certified
under Rule 23(b)(1) and/or (b)(2)............................................................23

a)     The Proposed Class Meets the Requirements of Rule 23(b)(1).....23

b)     The Proposed Class Meets the Requirements of Rule 23(b)(2).....26

B.     Plaintiff's Counsel Easily Meet The Requirements Of Rule 23(g) .....................27

III.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...................................27

IV.     THE REQUESTED COUNSEL FEES ARE FAIR, REASONABLE, AND APPROPRIATE UNDER THE CUSTOMARY "PERCENTAGE OF THE RECOVERY" METHOD ADOPTED IN THIS CIRCUIT, AND SHOULD BE AWARDED .........................................................................................................28

A.     The Size Of The Fund Created And The Number Of Persons Benefited.............30

B.     The Risk That Counsel Would Be Paid Nothing...................................................30

C.     The Absence Of Any Objections By Members Of The Class To The Fees Requested By Counsel And The Fact That Named Plaintiffs Support The Fee Request Favor Approval.........32

D.     The Complexity And Duration Of The Litigation .................................................32

E.     The Amount Of Time Devoted To The Case By Counsel....................................33

F.     The Skill And Efficiency Of The Attorneys Involved..........................................34

G.     Fee Awards In Similar Cases................................................................................35

V.     THE REQUESTED FEE IS ALSO FAIR AND REASONABLE UNDER THE LODESTAR METHOD.................................................35

VI.     COUNSEL SHOULD BE REIMBURSED FOR THEIR OUT-OF-POCKET EXPENSES .........................................................................36

VII.     NAMED PLAINTIFFS SHOULD BE AWARDED CONTRIBUTION FOR THEIR CLASS REPRESENTATION......................................37

VIII.     CONCLUSION.....................................................................................................38

## Table Of Authorities

**Cases**                                                                                    **Page**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...........................................................................................20

*Banyai v. Mazur*,
   205 F.R.D. 160 (S.D.N.Y. 2002) ....................................................................24

*Becher v. Long Island Lighting Co.*,
   164 F.R.D. 144 (E.D.N.Y. 1996) .....................................................................25

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...........................................................................................29

*Bonime v. Doyle*,
   416 F. Supp. 1372 (S.D.N.Y. 1976),
   *aff'd*, 556 F.2d 554 (2d Cir. 1977) ................................................................17

*Brotherton v. Cleveland*,
   141 F. Supp. 2d 907 (S.D. Ohio 2001) ..........................................................38

*Bublitz v. E.I. du Pont de Nemours & Co.*,
   202 F.R.D. 251 (S.D. Iowa 2001) ...................................................................26

*Bunnion v. Consol. Rail Corp.*,
   No. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998)...............................25

*Clauser v. Newell Rubbermaid, Inc.*,
   No. 99-5753, 2000 WL 1053395 (E.D. Pa. Jul. 31, 2000) ..............................25

*Cohen v. Warner Chilcott Pub. Ltd. Co.*,
   522 F. Supp. 2d 105 (D.D.C. 2007).........................................................18, 19, 20, 23

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .........................................................................38

*Crowley ex rel. Corning Inc. Inv. Plan v. Corning, Inc.*,
   234 F. Supp. 2d 222 (W.D.N.Y. 2002)...........................................................14

*DiFelice v. U.S. Airways, Inc.*,
   436 F. Supp. 2d 756 (E.D. Va. June 26, 2006),
   *aff'd*, 497 F.3d 410 (4th Cir. 2007) ...............................................................15

*Donovan v. Bierwirth*,
754 F.2d 1049 (2d Cir. 1985)........................................................................16

*Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.*,
573 F. Supp. 2d 205 (D.D.C. 2008)..............................................................35

*Feret v. Corestates Fin. Corp.*,
No. 97-CV-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998) ......................25

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)....................................................................10, 13

*Godshall v. Franklin Mint Co.*,
No. 01-CV-6539,
2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 2, 2004)..................................38

*Graden v. Conexant*,
No. 05-CV-695 (D.N.J. Sept. 14, 2009) ........................................................38

*Gruby v. Brady*,
838 F. Supp. 820 (S.D.N.Y. 1993)......................................................24, 25-26

*Hull v. Policy Mgmt. Sys. Corp.*,
No. 00-CV-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) ......................14

*In re Baan Co. Sec. Litig.*,
284 F. Supp. 2d 62 (D.D.C. 2003) .......................................................... *passim*

*In re Cardinal Health, Inc. ERISA Litig.*,
No. 04- CV-643 (S.D. Ohio Oct. 24, 2007)....................................................38

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).........................................................................17

*In re Charter Comm'ns, Inc. Sec. Litig.*,
No. MDL 1506, 4:02-CV-1186 CAS,
2005 WL 4045741 (E.D. Mo. June 30, 2005) ...............................................15

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (EEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)................17

*In re Duke Energy ERISA Litig.*,
281 F. Supp. 2d 786 (W.D.N.C. 2003) ..........................................................14

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)............................................................................10

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436, 456 (S.D.N.Y. 2004) ................................................................... *passim*

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    191 F.R.D. 457 (E.D. Pa. 2000).........................................................................24, 25

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)..................................................................... 17-18, 27

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    202 F.R.D. 12 (D.D.C. 2001).............................................................................21, 22

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    205 F.R.D. 369, 380 (D.D.C. 2002) ................................................................ 19, 27

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    MDL No. 1290 (TFH),
    2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16, 2003).......................................... *passim*

*In re Lucent Tech. Inc. Sec. Litig.*,
    307 F. Supp. 2d 633 (D.N.J. 2004) ................................................................9, 11, 12, 28

*In re McKesson HBOC, Inc. ERISA Litig.*,
    No. 00-CV-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ...............................14

*In re Merck & Co. Inc. Sec., Deriv. & ERISA Litig.*,
    No. 05-1151SRC, 2009 WL 331426 (D.N.J. Feb. 10, 2009)............................................21

*In re Michael Milken & Assoc. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ..............................................................................17

*In re Nat'l Student Mktg. Litig.*,
    68 F.R.D. 151 (D.D.C. 1974)..................................................................................8-9

*In re Newbridge Networks Sec. Litig.*,
    No. 94-1678-LFO,
    1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 23, 1998).....................................8, 18, 29, 32, 35

*In re Oca, Inc. Sec. & Derivative Litig.*,
    No. 05-2165 *R(3)*,
    2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009)...................................................12

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)(.......................................17

*In re Sumitomo Copper Litig.*,
　　182 F.RD. 85 (S.D.N.Y. 1998) ................................................22

*In re Tyco ERISA Litig.*,
　　No. 02-CV-1335 (D.N.H. Nov. 23, 2009) ........................................38

*In re Vitamins Antitrust Litig.*,
　　Misc. No. 99-197 (TFH),
　　2001 U.S. Dist. LEXIS 25067 (D.D.C. Jul. 16, 2001).................................33, 34, 35, 37

*In re Vitamins Antitrust Litig.*,
　　305 F. Supp. 2d 100 (D.D.C. Feb. 18, 2004). " .....................................8, 12, 19

*In re Warfarin Sodium Antitrust Litig.*,
　　212 F.R.D. 231 (D. Del. 2002), ".................................................9, 10, 11, 17

*In re Warfarin Sodium Antitrust Litig.*,
　　391 F.3d 516 (3d Cir. 2009)...................................................9

*In re Warner Commc'ns Sec. Litig.*,
　　618 F. Supp. 735 (S.D.N.Y. 1985),
　　*aff'd*, 798 F.2d 35 (2d Cir. 1986) ...............................................17

*In re WorldCom, Inc. ERISA Litig.*,
　　No. 02 Civ. 4816 (DLC), 2004 WL
　　2338151 (S.D.N.Y. Oct. 18, 2004) ................................................15

*Kane v. United Indep. Union Welfare Fund*,
　　No. 97-CV-1505, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998) ............................24

*Koch v. Dwyer*,
　　No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 23, 2001) ....................24

*Kolar v. Rite Aid Corp.*,
　　No. 01-CV-1229, 2003 WL 1257272 (E.D. Pa. Mar. 11, 2003)..............................24

*Lazy Oil Co. v. Witco Corp.*,
　　166 F.3d 581 (3d Cir. 1999)....................................................10

*Mass. Mut. Life Ins. Co. v. Russell*,
　　473 U.S. 134 (1985)...........................................................24

*Mayfield v. Barr*,
　　985 F.2d 1090 (D.C. Cir. 1993) ................................................8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)........................................................................26

*Rankin v. Rots*,
    220 F.R.D. 511 (E.D. Mich. 2004) ................................................24

*S. Carolina Nat'l Bank v. Stone*,
    139 F.R.D. 335 (D.S.C. 1991) ......................................................13

*Smith v. Delta Air Lines, Inc.*,
    422 F. Supp. 2d 1310 (N.D. Ga. 2006) ..........................................14

*Summers v. State St. Bank & Trust Co.*,
    453 F.3d 404 (7th Cir. 2006) ................................................... 13-14

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) .......................................................29

*Thomas v. Albright*,
    139 F.3d 227 (D.C. Cir. 1998)......................................................20

*Thomas v. SmithKline Beecham Corp.*,
    201 F.R.D. 386 (E.D. Pa. 2001)............................................... 24-25

*United States v. 412.93 Acres of Land*,
    455 F.2d 1242 (3d Cir. 1972)........................................................17

*Vista Health Plan, Inc. v. Warner Holdings Co. III Ltd.*,
    246 F.R.D. 349 (D.D.C. 2007)...............................................8, 23,29, 35

*W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970),
    *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ..............................................13

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
    899 F. Supp. 1297 (D.N.J. 1995), *aff'd without op* ....................9, 13

*Wright v. Or. Metallurgical Corp.*,
    222 F. Supp. 2d 1224 (D. Or. 2002), *aff'd*, 360 F.3d 1090 (9th Cir. 2004) .....................14

*Zilhaver v. UnitedHealth Group, Inc.*,
    646 F. Supp. 2d 1075 (D. Minn. 2009)..........................................38

**Statutes & Regulations**

Federal Rules of Civil Procedure

Fed. R. Civ. P. 23(a) ........................................................................1, 20, 23, 27

Fed. R. Civ. P. 23(a)(1) ....................................................................................20

Fed. R. Civ. P. 23(a)(2) ....................................................................................21

Fed. R. Civ. P. 23(a)(3) .............................................................................21-22

Fed. R. Civ. P. 23(a)(4) .............................................................................22-23

Fed. R. Civ. P. 23(b) .................................................................................20, 23

Fed. R. Civ. P. 23(b)(1).......................................................................23-24, 25, 27

Fed. R. Civ. P. 23(b)(1)(B),
Advisory Comm. Notes to 1996 Amendment  ...............................................24

Fed. R. Civ. P. 23(b)(2)..............................................................................23, 26

Fed. R. Civ. P. 23(d) ........................................................................................37

Fed. R. Civ. P. 23(e)(2).......................................................................2, 8, 18, 37

Fed. R. Civ. P. 23(g) ........................................................................................27

Employee Retirement Investment Security Act of 1974

Section 502, 29 U.S.C. § 1132 ..........................................................................6

**Miscellaneous**

*Newberg on Class Actions* § 4.01 (1977).......................................................23

## I.      INTRODUCTION

The Stipulation and Agreement of Settlement ("Stipulation")[1] in this matter provides for a $7,250,000 cash payment, to be distributed pursuant to a plan of allocation among members of a class comprised of current and former members of the Federal National Mortgage Association ("Fannie Mae") Employee Stock Ownership Plan (the "Plan").  This is an excellent outcome of the litigation especially given its inherent risks.

Plaintiffs David Gwyer, Terry Gagliolo and Gloria Sheppard (collectively, "Plaintiffs" or "Named Plaintiffs"), on behalf of themselves and the members of the Class, submit this memorandum in support of their Motion for Final Approval of Settlement.  In the interest of avoiding duplicative pleadings, Lead Counsel also submits this Memorandum in support of their Motion for an Award of Attorneys' Fees and Reimbursement of Expenses as well as for Case Contribution Awards for Named Plaintiffs.  By these consolidated Motions (the "Final Approval Motion"), movants request that the Court enter a Final Judgment which: (l) approves the Settlement set forth in the previously filed Stipulation between Named Plaintiffs and Defendants Fannie Mae and Individual Defendants (other than Daniel Mudd ("Mudd")) (collectively, "Defendants"); (2) certifies the Class for purposes of the Settlement; (3) awards Plaintiffs' Counsel[2] attorneys' fees and reimbursement of expenses; and (4) approves the payment of Case Contribution Awards to the Named Plaintiffs.

Plaintiffs submit that the Settlement is fair, reasonable, and adequate under the governing standards for evaluating class action settlements in this Circuit, especially one involving claims

---

[1]      The Stipulation was filed with the Court on April 29, 2010 (Dkt. No. 129).  Unless otherwise noted, capitalized terms used herein shall have the same meaning as ascribed to them in the Stipulation.

[2]      Plaintiffs' Counsel includes Lead Counsel, Harwood Feffer LLP, together with Barroway Topaz Kessler Meltzer & Check LLP and liaison counsel Tydings & Rosenberg LLP.

implicating alleged breaches of fiduciary duty regarding retirement plan investments in employer securities, a rapidly developing area of the law.  Further, Plaintiffs believe that certification of a non-opt-out settlement class is clearly appropriate pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Notices have been mailed and published as provided by this Court's Order of May 29, 2010, which preliminarily approved the Settlement and certified a settlement class. Accordingly, as an integral part of the Settlement, the parties seek certification of a settlement class.

The Settlement was the product of extensive hard-fought arm's-length negotiations.  As detailed herein and in the accompanying declarations in support of Settlement, Named Plaintiffs respectfully submit that the proposed Settlement merits this Court's approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

This Settlement is the end product of a lawsuit commenced in 2004.  The lawsuit began with a thorough and extensive investigation by Plaintiffs' Counsel of the ERISA law violations alleged in the initial Complaint and the Amended Consolidated Class Action Complaint ("Complaint"), and a careful assessment of the damages suffered by the Class and the defenses that might be asserted by Defendants.  Defendants in fact raised the expected defenses in comprehensive motions to dismiss the Complaint.  Plaintiffs' Counsel were well-prepared to respond, having previously reviewed and analyzed voluminous amounts of publicly available information concerning Fannie Mae, including Class Period ERISA and SEC filings, press releases and quarterly and year-end financial statements, as well as news stories, and wire service reports concerning Fannie Mae and the industry in which it operates.  Plaintiffs' Counsel researched the applicable law and filed comprehensive briefing in response to Defendants'

motions to dismiss the Complaint, successfully defeating such motions by all Defendants.[3]
Thereafter Plaintiffs' Counsel (a) reviewed and analyzed hundreds of thousands of pages of
documents on the combined electronic document depository established in this action and the
related securities and derivative actions; (b) conducted six depositions, including members of
Fannie Mae's Board of Directors, Executive Officers, and members of its Benefit Plans
Committee; (c) had prepared to and was ready to depose six other witnesses pursuant to this
Court's discovery order; (d) consulted at various stages of litigation with  retained experts
regarding damages and liability as well as, ultimately, preparing the Plan of Allocation; and (e)
sought at all times to coordinate with counsel in the related securities action to assure that
discovery between the actions would proceed in an expeditious and non-duplicative manner.

Significantly, throughout the period it was attempting to negotiate the Settlement (early
2008 through late January 2010), Defendant Fannie Mae was in a precarious financial condition,
having been placed under government conservatorship on September 6, 2008, leading to the re-
constitution of its board.  While Fannie Mae's stock traded as high as $70.52 at the beginning of
the Class Period, it traded at $1.26 on the day the Stipulation was signed, and it remains on
government-administered life support, sustained by the U.S. taxpayer.  Indeed, throughout the
negotiation period (and through today), there were fears that Fannie Mae faced a serious risk of
having to file for bankruptcy.  In mid-June 2010, Fannie Mae was de-listed by the New York
Stock Exchange.  Its shares now trade at 32 cents per share.

Accordingly, throughout the negotiations that eventually resulted in the proposed
Settlement, Plaintiffs' Counsel were acutely aware that there was a significant risk that -- even if
Named Plaintiffs were ultimately to prevail at trial on their theories of liability and damages -

---

[3]      Plaintiffs' Counsel also defeated a second dismissal motion filed by Fannie Mae's Compensation
Committee.

Fannie Mae would be bankrupt before the end of any trial, and that Class Members would therefore be unable to collect on any meaningful judgment from Fannie Mae, thereby receiving little or no compensation for their losses.  Furthermore, Plaintiffs' Counsel believed that not only would the trial in this action be lengthy and pose significant risk, the presence of continued prosecution of the related securities action might prolong the proceedings here and impose a further impediment to Class Members' ability to collect on a judgment.

Plaintiffs' Counsel, who are highly experienced in prosecuting ERISA class actions, strongly believe that this Settlement is fair and reasonable, and in the best interests of the Class. This belief is based on, *inter alia*, the following factors: (a) the questionable ability of Fannie Mae to continue operating as an ongoing business and the resulting risk that Fannie Mae would not be able to satisfy any meaningful judgment that might be rendered against it given the Company's reliance on taxpayer funding and the probable difficulty of obtaining the Congressional approval necessary to collect any funds from the Company; and (b) the additional risks and expense inherent in any ERISA class action in proving liability and damages at trial and through likely appeals. The facts and circumstances regarding the prosecution and settlement of this case are discussed in detail in the accompanying Joint Declaration of Samuel K. Rosen and Edward W. Ciolko in Support of Named Plaintiffs' Motion for Final Approval of Settlement, Certification of Settlement Class, and Lead Counsel's Request for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards for Named Plaintiffs ("Joint Declaration").

In light of these factors (as well the additional factors discussed below), Named Plaintiffs and Plaintiffs' Counsel believe that the Settlement is fair, reasonable, and adequate by any standard.  Indeed, the extent to which the Settlement reflects an excellent recovery to the Class

under the circumstances is illustrated by the fact that, as of the date that the Stipulation signed, there were still significant unresolved issues in the related securities action, with no end in sight for the proceedings in that action.  In addition, the proposed Plan of Allocation, plainly provides an equitable method for distribution of the Net Settlement Proceeds to Class Members (in accord with customary allocation practices), and is likewise fair, reasonable, and adequate. Given the substantial benefits to the Class of the proposed $7.25 million all-cash Settlement, the risks of litigation, Fannie Mae's precarious financial condition and reliance on taxpayer largess and the significant risk that Plaintiffs would be unable to collect on any meaningful judgment against Defendants even if Plaintiffs were to prevail at trial, it is respectfully submitted that the Settlement should be approved.

Moreover, confirming the fairness and reasonableness of the Settlement (and the Plan of Allocation) is the reaction of the Class. For example, although over 8,140 Notices of the Settlement were mailed to persons identified as potential Class Members (*see* Joint Declaration at ¶ 13 and footnote 5) -- and although these Notices clearly advised Class Members of their rights to object to the proposed Settlement by submitting requests to do so by the Court-established deadline of July 13, 2010 -- *to date Plaintiffs' Counsel have received no objections to the proposed Settlement*.[4] The reaction of the Class provides further strong support in favor of approving the Settlement and the Plan of Allocation as fair, reasonable, and adequate.

For the reasons set forth herein and in Plaintiffs' Counsel's Joint Declaration, Plaintiffs' Counsel also respectfully submit that their request for an award of attorneys' fees and expenses of 33 1/3% of the Gross Settlement Fund ($2,416,667) and reimbursement of their expenses in the amount of $242,403, is fair, reasonable, and appropriate under both the customary

---

[4]     To the extent any objections are received after the filing of the instant memorandum and prior to the Fairness Hearing, Plaintiffs' Counsel will address such objections at the Fairness Hearing.

percentage-of-the-fee method and the lodestar check method, and should accordingly be approved.   For example, the requested 33 1/3% fee is not only well within the range of percentage-based fees awarded in other ERISA cases, but the requested fee is less than Plaintiffs' Counsel's total lodestar. Significantly, to date no Class Members have filed any objections to the requested award of fees and expenses, thereby further confirming the assessment of the Named Plaintiffs that the requested award is fair, reasonable, and appropriate. Finally, for the reasons set forth below, the Court should also approve Case Contribution Awards of $7,500 to each Named Plaintiff, each of whom prepared for, and was deposed by, Defendants and responded to document requests and interrogatories from each Defendant.

## PROCEDURAL HISTORY

The first of the Named Plaintiffs' complaints was filed on October 14, 2004, under Section 502, 29 U.S.C. § 1132, of ERISA against Fannie Mae and certain other named and unnamed fiduciaries of the Plan, who were responsible for the investment of the Plan's assets and administration, between January 1, 2001 and the filing date.   Named Plaintiffs filed their ERISA class actions on behalf of themselves and other similarly situated Plan participants. Named Plaintiffs alleged that Defendants should have known Fannie Mae was an imprudent Plan investment because of their knowledge of, or failure to inform themselves of, unlawful accounting artifices and other improper activities that allowed Fannie Mae to inflate artificially the Company's stock price, and manipulate its earnings.

On June 15, 2005, Plaintiffs filed the Amended Class Action Complaint and on July 12, 2005, Defendants moved its dismissal for failure to state a claim under ERISA.   After thorough briefing by all sides, oral argument on the Motion was held on January 13, 2006, and by Order dated May 8, 2007, this Court denied Defendants' motions in their entirety.   On July 23, 2007, one of the Defendants, Fannie Mae's Compensation Committee again moved to dismiss the

Amended Complaint and, by Order dated July 17, 2008, this Court again denied its motion.  As noted above, Plaintiffs then engaged in extensive discovery.

Plaintiffs' Counsel and counsel for Fannie Mae had discussed the possibility of settlement at various points in time during the litigation, beginning in early 2008.  Those discussions proceeded on and off through December 2009, at which time a series of intensive meetings between Named Plaintiffs' and Fannie Mae's counsel led to the parties entering into the Stipulation which was presented to the Court for preliminary approval.  On May 29, 2010, this Court signed an Order preliminarily approving the Settlement, conditionally certifying the Settlement, and approving the notice plan and scheduling the Settlement Fairness Hearing.  In accordance with such Order, notice was disseminated to the Class by mailing on June 10, 2010.  Additionally, Plaintiffs set up and maintained a website dedicated to the Settlement – http://www.fanniemaeERISAsettlement.com which contains a summary of the litigation, relevant Settlement and case-related documents such as the Notice and Stipulation itself.  The site went "live" on June 10, 2010 and will be (and has been) updated as necessary.  Further, Plaintiffs have set up a toll-free number to call for information about the Settlement as well as to request materials and a dedicated e-mail address to receive similar queries electronically.  Through July 6, 2010, Plaintiffs have received 18 calls through the automated phone system, and responded to any specific requests for information in a timely fashion.  Additionally, there have been 516 "hits" on the dedicated website.

Further, Notice was published on June 16, 2010 in *Business* Wire and on June 18, 2010 in *USA Today*.[5]  *See* Joint Declaration at Paragraph 13.  The deadline for filing any objections is

---

[5]       Although the Preliminary Approval Order required publication on June 11, 2010, there was a slight delay in the publication.  However, because Notice was effectuated through a thorough multi-prong program, as described herein, this has ensured that the maximum number of Settlement Class members have received Notice of the proposed Settlement.

July 13, 2010, and, to date, no objections have been received.

## ARGUMENT

I.  **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT**

The Court may approve a proposed settlement of a class action "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Approval of a class action settlement "lies within the discretion of this Court." *In re Vitamins Antitrust Litig.,* 305 F. Supp. 2d 100, 103 (D.D.C. Feb. 18, 2004). "The exercise of this discretion, however, is constrained by the 'principle of preference' favoring and encouraging settlements in appropriate cases." *Id* at 103 (quoting *Pigford v. Glickman,* 185 F.R.D. 82, 103 (D.C.C. 1999)). There is an overriding public interest in settling litigation, and this is particularly true in class actions "which are often complex, drawn out proceedings demanding a large share of finite judicial resources." *Mayfield v. Barr,* 985 F.2d 1090, 1092 (D.C. Cir. 1993).

While there is no single test for determining whether a proposed class action settlement should be approved under Rule 23(e), in making the fairness determination courts in this District consider several factors, including: (1) the stage of the proceedings, complexity, expense, and likely duration of the action; (2) the ability of the defendant to absorb a larger recovery; (3) the risks of establishing liability and damages and the range of reasonableness of the settlement in relation to the strength of the plaintiffs case; (4) the reaction of the class to the settlement; (5) whether the settlement is a result of arm's-length negotiations; and (6) the opinion of experienced counsel. *See Vista Health Plan, Inc. v. Warner Holdings Co. III Ltd.,* 246 F.R.D. 349, 360 (D.D.C. 2007); *In re Baan Co. Sec. Litig.,* 284 F. Supp. 2d 62, 64 (D.D.C. 2003); *In re Newbridge Networks Sec. Litig.,* No. 94-1678-LFO, 1998 U.S. Dist. LEXIS 23238, at *3-4 (D.D.C. Oct. 23, 1998); *In re Nat'l Student Mktg. Litig.,* 68 F.R.D. 151,

155 (D.D.C. 1974). However, the inquiry on a motion to approve a settlement is a limited one, and "the Court must avoid deciding or trying to decide the likely outcome of a trial on the merits." *Nat'l Student Mktg. Litig.,* 68 F.R.D. at 155.

A.  **The Stage Of The Proceedings And The Complexity, Expense, And Likely Duration Of The Action All Favor Approval Of This Settlement**

The first factor to be considered involves the "'probable costs, in both time and money, of continued litigation.'"  *In re Lucent Tech. Inc. Sec. Litig.,* 307 F. Supp. 2d 633, 642 (D.N.J. 2004) (citations omitted).  As the court recognized in *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 254 (D. Del. 2002), "Settlement is particularly favored in a complex class action such as this."  This action involves ERISA claims and to prevail on these claims, Named Plaintiffs would have had to establish that:  (a)  Defendants knew or should have known that Fannie Mae engaged in improper practices in connection with its accounting for derivatives and in smoothing earnings during the Class Period through the use of "cookie jar" accounting methods; and (b) failed to disclose such misconduct.  Given the nature and complexity of these issues, litigation of this action was not likely to have ended even with a trial.  Regardless of the outcome, the parties would likely have engaged in expensive and time-consuming post-trial and appellate practice.  Such appeals could have caused class members to wait several years for a reduced recovery, if any.  *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 536 (3d Cir. 2009) ("Moreover, it was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *Weiss v. Mercedes-Benz of N. Am., Inc.,* 899 F. Supp. 1297, 1301 (D.N.J. 1995), *aff'd without op.,* 66 F.3d 314 (3d Cir. 1995) ("Given the crowded state of this Court's calendars, the case would not be tried prior to 1997 [opinion dated May 11, 1995].  It is not unrealistic to predict that, if fully litigated, the present class action would not be concluded before the end of this decade….").

The proposed Settlement, on the other hand, will provide the Class with an immediate recovery of $7.25 million in cash.  Accordingly, this factor strongly supports approval of the proposed Settlement.  *See In re Warfari.,* 212 F.R.D. at 254 ("In sum, this factor strongly supports settlement.").

Pursuit of this action has been costly.  Plaintiffs' Counsel have devoted significant time and effort to the preparation of pleadings, including the Complaint, and to the conduct of the pre-filing investigation that preceded the filing of the initial Complaint.  The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement.  *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  This factor "captures the degree of case development that class counsel have accomplished prior to settlement."  *GMC*, 55 F.3d at 813.  "Through this lens," the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Id.; In re Warfarin,* 212 F.R.D. at 255.  *See also Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999) ("'Post-discovery settlements are more likely to reflect the true value of the claim and be fair.'") (citation omitted).

Here, over a period of more than six years, Named Plaintiffs pushed this case forward in a manner favorable to the Class, positioning themselves to obtain a strong Settlement.  Plaintiffs were familiar with the merits before discussing settlement since they had (1) conducted a lengthy investigation prior to filing the initial Complaint; (2) litigated important issues through Defendants' motions to dismiss; and (3) engaged in the extensive and intensive discovery described above.  Accordingly, the proposed Settlement is the product of informed negotiations,

and this factor strongly weighs in favor of approval of the proposed Settlement.  *See In re Warfarin,* 212 F.R.D. at 255.

Although at the time of settlement, Named Plaintiffs had already expended significant time and effort to develop both the legal and factual foundations for their claims, pursuing the litigation against Defendants through full discovery and trial would have been both difficult and expensive, and would have also clearly consumed substantial judicial resources.  For example, Named Plaintiffs would have still have had to (a) engage in extensive additional discovery; (b) complete costly expert discovery on disputed issues of damages and relevant accounting principles; (c) move for and obtain class certification; (d) defeat Defendants' inevitable motions for summary judgment; and (e) prevail on both liability and damages at trial.

A trial in this case would likely have lasted several weeks, involved dozens of witnesses, and involved significant expert testimony.  And, even if a trial were successful, "necessary delay through a trial, post-trial motions, and the appellate process would likely deny the Class any recovery for years, an unfavorable result for all parties . . . ."  *In re Lucent,* 307 F. Supp. 2d at 642.  In sum, there can be no serious doubt that, in considering the "likely duration of the action" factor, the settlement of this action now will save the Class substantial sums in attorneys' and experts' fees, avoid the delay and uncertainty that a trial necessarily entails, and also conserve significant judicial resources.

Speedy and efficient resolution of what otherwise could be long, complex and expensive litigation is to be encouraged.  *See, e.g., In re Lorazepam & Clorazepate Antitrust Litig.,* MDL No. 1290 (TFH), 2003 U.S. Dist. LEXIS 12344, at *14 (D.D.C. June 16, 2003).  The instant Settlement does not "come too early to be suspicious nor too late to be a waste of resources," and has instead, in the words of one court, come "'at a desirable point in the litigation for the parties to reach an

11

agreement and to resolve these issues without further delay, expense, and litigation.'"  2003 U.S. Dist. LEXIS 12344, at **16-17 (quoting *In re Vitamins Antitrust Litig.,* 305 F. Supp. 2d at 105). "The question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it. The parties need not undertake extensive formal discovery or build a voluminous record before settlement." *In re Oca, Inc. Sec. & Derivative Litig.,* No. 05-2165 Section R(3), 2009 U.S. Dist. LEXIS 19210, at *39-40 (E.D. La. Mar. 2, 2009) (citations omitted).[6]

Moreover, as discussed above, absent a settlement there was a material risk that Named Plaintiffs would be unable to recover a larger, or any judgment (even assuming that they prevailed after trial and any appeals), given the risk that Fannie Mae could be forced into bankruptcy, and the fact that Fannie Mae's insurance coverage would have been substantially (if not totally) exhausted by costs of defense had the case continued to be litigated through discovery and trial. The instant Settlement "secures a substantial recovery without further litigation, delay, expense, or uncertainty, and this factor weighs in favor of the Settlement." *In re Lucent,* 307 F. Supp. 2d at 642-43.

---

[6]     The court in *Oca* also held that, "if the settlement proponents have taken affirmative steps to gather data on the claims at issue and the terms of the settlement are not patently unfair, the Court may rely on counsel's judgment that the information gathered was enough to support a settlement."  *Id.* at *40 (citation omitted).

**B. The Risks Of Establishing Liability And Damages, And The Range Of Reasonableness Of The Settlement In Relation To The Facts Of The Case, Favor Approval Of The Settlement**

In assessing the fairness, reasonableness, and adequacy of the Settlement, the Court must balance the risks of establishing liability and damages against the benefits afforded to the members of the Class, and the immediacy and *certainty* of a substantial recovery against the risks of continuing litigation. *Girsh*, 521 F.2d at 157. In *Weiss*, the Court noted in its discussion of this factor that: "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. As another court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). The risks that Named Plaintiffs face in establishing liability clearly demonstrate that the Settlement provides the Class with a substantial benefit that is not only fair, reasonable, and adequate, but an excellent result.

Here, Named Plaintiffs would have likely faced considerable risks in establishing liability. The arguments raised in Defendants' motion to dismiss highlight the potential arguments to be faced at trial. Even after four years of litigation, the relative strength of Named Plaintiffs' claims and Defendants' defenses thereto have been -- and would continue to be -- the subject of substantial dispute between the parties. *See S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 340 (D.S.C. 1991) (noting that such a risk militates in favor of settlement).

For example, district courts as well as several Circuit courts have held that under certain circumstances (such as when there are serious issues with plaintiff's ability to prove/present a fiduciary's non-action in the face of material non-public information/corporate malfeasance) there is no liability when fiduciaries invest in employer securities. *See, e.g., Summers v. State St.*

13

*Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006); *Wright v. Or. Metallurgical Corp.*, 222 F. Supp. 2d 1224 (D. Or. 2002), *aff'd*, 360 F.3d 1090 (9th Cir. 2004); *Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310 (N.D. Ga. 2006); *Crowley ex rel. Corning Inc.  Inv. Plan v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002); *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003); *In re McKesson HBOC, Inc. ERISA Litig.*, No. 00-CV-20030, 2002 WL 31431588 (N.D. Cal. Sept. 30, 2002); *Hull v. Policy Mgmt. Sys. Corp.*, No. 00-CV-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001).

Thus, this action involves claims for relief under theories of liability and recovery still in the process of development.  While Plaintiffs' Counsel remain confident in their ultimate ability to prove the claims asserted, and were prepared to follow through with the litigation through trial and appeals, the risks of the case not being certified as a class action and/or being dismissed at the summary judgment stage or after trial and appeal, when weighed against the immediate benefits of settlement, indicate that the Settlement is in the best interest of the Class.

Here, the ERISA claims advanced by Plaintiffs involve numerous complex legal and factual issues, which will require many additional depositions and expert discovery and testimony, exponentially adding to the expense and duration of the litigation.  Named Plaintiffs allege and therefore would be required to prove at trial that Defendants breached their ERISA-mandated duties by: (i) failing to prudently and loyally manage the Plan's assets; (ii) failing to monitor the Defendants and provide them with accurate information; (iii) failing to loyally serve the Plan and its participants due to unresolved conflicts of interest; and (iv) knowingly enabling their co-fiduciaries to commit breaches of their fiduciary responsibilities.  Conducting the balance of class, fact and expert discovery, as well as the motion practice at each stage, would be an extremely complex and expensive endeavor.  It is not difficult to envision many months of

additional costly and hotly contested fact and expert discovery, as well as dispositive motions and motions *in limine* and other pre-trial litigation.  These factors, therefore, weigh heavily in favor of settlement. *See In re Charter Comm'ns, Inc. Sec. Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741, at *8 (E.D. Mo. June 30, 2005) (court approved settlement where further litigation would take years and cost millions of dollars, which in turn would deplete insurance policy proceeds funding the cash portion of the settlement).

The legal issues implicated by this action are complex and will require extensive and expensive expert testimony as well as multiple dispositive motions and likely appeals.  The Southern District of New York has described in a similar ERISA case the fact that there is a "general risk inherent in litigating complex claims such as these to their conclusion."  *In re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816 (DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (approving settlement).  Clearly, the complex nature of this type of case weighs in favor of settlement.  In *In re Global Crossing Sec. & ERISA Litig.*, the court noted:

> The ERISA cases would pose additional factual and legal issues. Fiduciary status, the scope of fiduciary responsibility, the appropriate fiduciary response to the Plans' concentration in company stock and [company] business practices would be issues for proof, and numerous legal issues concerning fiduciary liability in connection with company stock in 401(k) plans remain unresolved. These uncertainties would substantially increase the ERISA cases' complexity, duration, and expense -- and thus militate in favor of settlement approval.

225 F.R.D. 436, 456 (S.D.N.Y. 2004); *see also DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. June 26, 2006), *aff'd*, 497 F.3d 410 (4th Cir. 2007) (holding, in an analogous action and after a bench trial which followed extensive discovery and dispositive and class certification motion practice, that the defendant-fiduciaries' actions were prudent despite the long slide of U.S. Airways stock price).

In addition to establishing Defendants' liability, Plaintiffs also face substantial risk in proving damages. Establishing ERISA damages involving the imprudent investment of ERISA pension plan assets was first set out in *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985).   ERISA requires the breaching fiduciaries to make good to the plan the difference between the most profitable plan alternative and the challenged imprudent investment.  *Id.* at 1056 ("[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these").  In general, the calculation of "ERISA" damages would be "complex, time-consuming and expensive." *See, e.g., In re Global Crossing*, 225 F.R.D. at 460.

Plaintiffs retained an expert to perform damage calculations in advance of the settlement discussions conducted in this matter.  However, preparations for trial would entail a great amount of time, effort and expense.  Calculation of damages would have to be brought through full discovery process and adjudication where the judge, as trier of fact, can set the relevant time period when the relevant investment was to be considered "imprudent" for the plan at issue (a factually intensive question in and of itself).  *See Donovan*, 754 F.2d at 1057. Damage calculations in ERISA cases like this are, in practice, computer and expert-intensive.  The proof invariably requires a sophisticated computer model of the plan involved, usually tracking the assets held by the plan and its participants, purchases and sales of the individual accounts of participants as well as any relevant assets held, purchased and/or sold by the plan but not allocated to its participants.  These calculations must be repeatedly performed to calculate damages suffered by each participant's account as well as the plan as a whole.  An expert must create the model, test it, and effectively explain it.  This sort of complexity, or the possibilities of glitches in the model, can have unexpected results.  This type of complexity favors early

16

resolution.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993)(approving settlement and noting that damage calculations is often a "battle of experts at trial, with no guarantee of the outcome");[7] *Bonime v. Doyle*, 416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1977) (difficulty in determining damages a factor supporting settlement).

Inevitably, the question of damages would have led to sharp disagreement between the parties' respective experts.  *See In re Warfarin,* 212 F.R.D. at 256 ("Damages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'") (quoting *In re Cendant Corp.*, 264 F.3d at 239); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (EEB), 2007 WL 4225828, at *4 (D.N.J. Nov. 28, 2007) (finding that the "risks [of a battle of the experts with regards to damages] are avoided by the Settlement").  The unpredictability of the battle of damage experts thus weighs in favor of settlement.  *See In re Warfarin,* 212 F.R.D. at 256; *In re Cendant Corp.*, 264 F.3d at 239 ("Were a jury confronted with *competing* expert opinions of corresponding complexity, there is no compelling reason to think that it would accept Named Plaintiff's determination rather than [defendant's] which would posit a much lower figure for the Class's damages.") (emphasis added); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 183 (E.D. Pa. 2000)("On both the causation and the estimate of damages, the parties would have to

---

[7]     *See, e.g., In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)(noting unpredictability of outcome of battle of damage experts). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe"); *United States v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d Cir. 1972) (jury under no obligation to accept as completely true testimony of any expert witness).

submit expert testimony.  Regardless of the strength of plaintiffs' position, a jury might reject their expert witnesses.").

### C.      The Reaction Of The Class To The Settlement Favors Approval

This Settlement has also been well received by the Class. As noted earlier, pursuant to the Court's May 29, 2010 Preliminary Approval Order, the detailed Notice was mailed to over 8,140 persons identified as potential Class Members. The deadline for filing objections to the Settlement or requesting exclusion from the Class is July 13, 2010.  To date, no Class Members have filed objections to the Settlement.[8]  Positive reaction of the Class "counsels in favor of approval." *Cohen v. Warner Chilcott Pub. Ltd. Co.,* 522 F. Supp. 2d 105, 118 (D.D.C. 2007).  "The absence of objections, . . .  give rise to a strong inference of satisfaction among the class members," *Newbridge Networks,* 1998 U.S. Dist. LEXIS 23238, at *7, and "also support its approval." *Baan,* 284 F. Supp. 2d at 66.

### D.      The Settlement Was The Product Of Arms'-Length Negotiations and Recommended By Experienced Counsel

Every aspect of these proceedings, from motion practice through the completion of the Settlement negotiations, has been vigorously contested. The proposed Settlement is the product of lengthy negotiations, which took place in a span of over two years. The presumption in favor of settlements reached in such circumstances reflects the courts' belief that vigorous negotiation between seasoned and experienced counsel protects against collusion and advances the fairness concerns underlying Rule 23(e).  The Settlement proposed here - which was negotiated on behalf of the Class by experienced ERISA class action counsel - is the product of extensive arms-length negotiations undertaken in good faith, after substantial factual investigative and legal analysis.  Nothing in the course of the negotiations or the substance of this Settlement discloses

grounds to doubt its fairness.  To the contrary, the arm's-length nature of the negotiations and the participation of experienced advocates throughout the process strongly support the conclusion that the proposed Settlement is fair, reasonable and adequate.  *Vitamins,* 305 F. Supp. 2d at 104 ("Because there is nothing in the course of the negotiations or the face of the Settlement that 'discloses grounds to doubt its fairness,' the Court finds that the Settlement at issue was the result of arms' length negotiations and is thus presumptively fair, adequate and reasonable.") (citations omitted).

Moreover, the "[o]pinion of experienced and informed counsel should be afforded substantial consideration" by a court in evaluating the reasonableness of a proposed settlement. *In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369, 380 (D.D.C. 2002).  Plaintiffs' Counsel firmly believe that the proposed Settlement is fair, reasonable and adequate.  Plaintiffs' Counsel are highly experienced in class action securities matters (Joint Declaration at ¶ 27), and accordingly their opinion that the proposed Settlement is "fair, adequate and reasonable" is deserving of this Court's consideration. *Vitamins,* 305 F. Supp. 2d at 106. *See also Cohen,* 522 F. Supp. 2d at 121 ("These experienced counsel are clearly of the opinion that the settlement in this action is fair, adequate and reasonable, and their opinion 'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement'") (citation omitted).  Thus, this factor also weighs in favor of approval of the Settlement.

### E.      The Settlement Is Being Thoroughly Vetted By An Independent Fiduciary

Another factor the Court should take into consideration when evaluating this extensively negotiated Settlement is the fact that a qualified and independent fiduciary will be thoroughly studying the Settlement's terms.  Courts evaluating settlements of similar claims have cited with

---

[8]      A purported objection, filed by a court-determined "frivolous" litigator was filed.  *See* Joint Declaration at footnote 5 and Exhibits G and H to Joint Declaration.

approval independent fiduciary review of a settlement's terms.  *See, e.g., Global Crossing,* 225 F.R.D. at 462 (noting that such review helps to drastically reduce "the likelihood of a collusive settlement between defendants and plaintiffs' lawyers at the expense of the plaintiff class[]").

## II.   THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23

Rule 23 governs the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class. See *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 618 (1997); *Thomas v. Albright,* 139 F.3d 227, 234 (D.C. Cir. 1998). "A class may be certified for settlement purposes only, and such 'settlement-only' classes have become increasingly prominent." *Cohen,* 522 F. Supp. 2d at 113 (quoting *Amchem,* 521 U.S. at 618). All the criteria for class certification for litigation purposes, except manageability, apply to certification for settlement purposes. *Vista,* 246 F.R.D. at 356 (court need not determine whether the case, if tried, would present management problems). Thus, a settlement class should be certified where it meets the four requirements of Rule 23(a) - numerosity, commonality, typicality and adequacy - and the requirements of one of the three subsections of Rule 23(b).  *Id.* at 356-57.  The proposed Class meets these requirements and certification of the Class is therefore appropriate here.

### A.   The Proposed Settlement Class Satisfies The Requirements Of Rule 23(a)

#### 1.   The Settlement Class is so Numerous that Joinder of All Members is Impracticable

Under Rule 23(a)(1), the class must be so numerous that joinder of all members is "impracticable." Courts in this District "have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Cohen,* 522 F. Supp. 2d at 114.  During the Class Period, there were millions of shares of Fannie Mae stock in the Plan. Notices were sent to over 8,140 persons identified as potential Class

Members.  The threshold for a presumption of impracticability of joinder is thus easily exceeded.

### 2.   Common Questions of Law and Fact Exist as to Each Member of the Settlement Class

Rule 23(a)(2) requires only that there be some questions of law or fact common to the class. "'The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001) (citation omitted).  Here, there are numerous common questions of both law and fact, including whether: (a) Defendants each owed a fiduciary duty to Plaintiffs and Class Members; (b) Defendants breached their fiduciary duties to Plaintiffs and Class Members by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries; (c) Defendants violated ERISA by misrepresenting Fannie Mae's true financial condition and consequently the true value and riskiness of Fannie Mae's stock; and (d) the Class Members have sustained damages and, if so, what is the proper measure of damages.  Other common questions include whether certain Defendants failed to properly monitor their appointees, whether certain individual Defendants knew of alleged improprieties and the degree to which they informed the other Plan fiduciaries about this information, and issues of co-fiduciary liability.  All of these issues are common to the Class.  *See, e.g., In re Merck & Co. Inc. Sec., Deriv. & ERISA Litig.*, No. 05-1151SRC, 2009 WL 331426, at *7 (D.N.J. Feb. 10, 2009).

Accordingly, the commonality requirement is satisfied in this case.

### 3.   Named Plaintiffs' Claims Are Typical of Those of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." The typicality requirement is satisfied "if each class member's claim arises from the same course of events that led to the claims of the representative parties and each

class member makes similar legal arguments to prove the defendant's liability." *Lorazepam,* 202 F.RD. at 27 (citing *Pigford,* 182 F.RD. at 349).

In this case, Named Plaintiffs' claims are unquestionably typical of the claims of the Class they seek to represent. Named Plaintiffs purchased Fannie Mae stock during the Class Period at allegedly artificially inflated prices.  If, as Named Plaintiffs allege, the Plan and all Plan participants suffered a loss as a result of the wrongdoing alleged in the Complaint, the Class members necessarily shared proportionately in those losses.  "'Although [the plaintiffs] may not have suffered identical damages, that is of little consequence to the typicality determination when the common issue of liability is shared.'"  *Lorazepam,* 202 F.R.D. at 28 (citation omitted). Furthermore, Named Plaintiffs' claims arise out of the "same course of events" that caused Defendants' liability to the Class as a whole.  *In re Sumitomo Copper Litig.,* 182 F.R.D. 85, 88 (S.D.N.Y. 1998) ("factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, the presence of both purchasers and sellers, and other such concerns will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class") (citing *Green v. Wolf,* 406 F.2d 291, 299-301 (2d Cir. 1968)).  Accordingly, the typicality requirement is satisfied.

### 4.    Named Plaintiffs Will Fairly and Adequately Represent the Settlement Class

The final requirement of Rule 23(a) is that the representative parties fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4). "'Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'"  *Cohen,* 522 F. Supp. 2d at 115; *Vista,* 246 F.R.D. at 358.

Here, the interests of the Named Plaintiffs are aligned with the interests of the other Class Members because they have all been injured by the same conduct as alleged in the Complaint. Named Plaintiffs do not have any interests antagonistic to those of the other Class Members.

In addition, Named Plaintiffs are represented in this case by qualified and highly experienced securities class action lawyers, who have successfully served as lead or co-lead counsel in numerous ERISA class actions. *See* Joint Declaration at ¶ 36. This representation further weighs in favor of a finding of adequate representation of the Class.

### 5.     The Class May Be Properly Certified under Rule 23(b)(1) and/or (b)(2)

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b).  It has oft been noted that the additional requirements of Rule 23(b) overlap considerably with those of Rule 23(a), and with each other. *Newberg on Class Actions* § 4.01, at 185 (1977).  Having established that Plaintiffs meet all the requirements of Rule 23(a), the proposed Settlement class also meets the requirements of Rule 23(b), in particular subsections (b)(1) and (b)(2).

### a)     The Proposed Class Meets the Requirements of Rule 23(b)(1)

Under Rule 23(b)(1), a class may be certified if:

(1)     prosecuting separate actions by or against individual class members would create a risk of:

    (A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

Therefore, Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000).   Certifications under both sections of Rule 23(b)(1) are common in ERISA breach of fiduciary duty cases because of the defendants' alleged "unitary treatment" of the individual members of the proposed Class. *Id.* (citations omitted).   *See also* Fed. R. Civ. P. 23(b)(1)(B), Advisory Comm. Notes to 1996 Amendment (stating that certification under 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).

Here, the Complaint alleges breaches of fiduciary duties under ERISA.   Therefore, the only remedy available to Plan participants is Plan-wide relief, including the restoration of losses to the Plan.   *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-40 (1985).   Thus, actions such as the instant one for breaches of fiduciary duty under ERISA are by law representative actions. "Because of ERISA's distinctive 'representative capacity' and remedial provisions, 'ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.'"   *Global Crossing*, 225 F.R.D. at 453 (certifying an exactly analogous class of defined contribution plan participants for settlement); *see also Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (holding that certification of a class seeking relief for violations of ERISA was proper under Rule 23(b)(1)); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002)(granting class certification under Fed. R. Civ. P. 23(b)(1)).[9]

---

[9]   *See also Rankin v. Rots*, 220 F.R.D. 511, 521 (E.D. Mich. 2004); *Kane v. United Indep. Union Welfare Fund*, No. 97-CV-1505, 1998 WL 78985, at *9 (E.D. Pa. Feb. 24, 1998); *Kolar v. Rite Aid Corp.*, No. 01-CV-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003); *Koch v. Dwyer*, No. 98-CV-5519, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 23, 2001); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397 (E.D. Pa. 2001); *Ikon*, 191 F.R.D. at 461; *Feret v. Corestates Fin. Corp.*, No. 97-CV-6759, 1998 WL 512933, at *13-14 (E.D. Pa. Aug. 18, 1998); *Bunnion v. Consol. Rail Corp.*, No. 97-4877, 1998 WL 372644, at *13 (E.D. Pa. May 14,

Given the unique "group-based" relief offered under ERISA for violations of fiduciary duties owed to participants in covered benefit plans, an action such as this one is a textbook case for class treatment under Rule 23(b)(1).  This basic point was elucidated concisely by the court in *Ikon*, a case in which some of the plaintiff class' claims were breaches of fiduciary duty under ERISA highly analogous to those brought in this action:

> The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.  There is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions.

*Ikon*, 191 F.R.D. at 466 (citing *Feret*, 1998 WL 512933, at *13 (citations omitted)).  *See also Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 153 (E.D.N.Y. 1996) (certifying ERISA fiduciary misrepresentation case under Rule 23(b)(1)(A) because multiple cases "could conceivably result in different courts reaching conflicting decisions").

Because relief under ERISA for violations of fiduciary duties owed to participants in covered benefit plans is to the plan itself, rather than to individuals, an action such as this one is entirely appropriate for class treatment under Rule 23(b)(1).  This point was succinctly stated in a case in which the plaintiff class also claimed breaches of fiduciary duty under ERISA:

> As plaintiffs are seeking relief on behalf of the Fund as a whole, the Court finds that prosecution of separate actions by individual Members would, indeed, create a risk of adjudications which would be dispositive of the interests of the other members not parties to such adjudications.  "Because a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly."

---

1998); *Clauser v. Newell Rubbermaid, Inc.*, No. 99-5753, 2000 WL 1053395, at *6 (E.D. Pa. Jul. 31, 2000).

*Gruby*, 838 F. Supp. at 828.  Indeed, as the U.S. Supreme Court has recognized, cases such as this are typical examples of Rule 23(b) actions.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999).  The *Ortiz* court noted that Rule 23(b)(1)(B) actions guard against the risk of impairing the individual class member's ability to protect their interests, finding that:

> Classic examples of such a risk of impairment may, for example, be found in . . . actions charging a "breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class" of beneficiaries, requiring an accounting or similar procedure "to restore the subject of the trust." In each of these categories, the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members.

*Id.* at 834 (quoting the Advisory Committee's Notes on Fed. R. Civ. P. 23).  Thus, the Court should certify such a class under Rule 23(b)(1).

### b)   The Proposed Class Meets the Requirements of Rule 23(b)(2)

Under Rule 23(b)(2), a class may be certified if:

> [T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . .

Here, the proposed Class also satisfies the requirements of Rule 23(b)(2).  Defendants' conduct (and the relief sought from the effects of it) in an ERISA breach of fiduciary duty case must apply on a class-wide basis to participants of the Plan as a whole.  *See, e.g.*, *Global Crossing*, 225 F.R.D. at 453 (finding that class in an ERISA breach of fiduciary duty action satisfied all the requirements of Rules 23(a), (b)(1) and (b)(2)); *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001) (certifying a Rule 23(b)(2) class in an ERISA breach of fiduciary duty action and noting that the monetary relief granted flowed directly from the declaratory relief sought by plaintiffs).  Because the plaintiff has satisfied all of the requirements

under Fed. R. Civ. P. 23(a) and the requirements of Fed. R. Civ. P. 23(b)(1) and/or (2), this Court should certify the proposed class for purposes of this Settlement.

**B.      Plaintiff's Counsel Easily Meet The Requirements Of Rule 23(g)**

In addition to the other requirements outlined above, there is another analysis that Rule 23 requires.  Rule 23(g) requires the Court to examine the capabilities and resources of Plaintiffs' Counsel to determine whether they will provide adequate representation to the Class.  Plaintiffs' Counsel easily meet the dictates of Rule 23(g).

Here, as presented in detail above, Plaintiffs' Counsel has done substantial work to identify or investigate potential claims in this action, refined the allegations through the Complaint and in subsequent discovery including six depositions and analysis of  hundreds of thousands of pages of documents.  Plaintiffs' Counsel has defeated motions to dismiss by some of the nation's most prestigious law firms.  As evidenced in Lead Counsel's firm resume, annexed to the accompanying Joint Declaration, Plaintiffs' Counsel have substantial experience, individually and collectively, in handling ERISA class actions, other complex litigation, and claims of the type asserted in this action.  Hence, Plaintiffs' Counsel's extensive efforts in prosecuting this case, in combination with their in-depth knowledge, satisfy Rule 23(g). Therefore, in sum, for purposes of effectuating this Settlement, this action should be certified as a class action under Rule 23 of the Federal Rules of Civil Procedure.

**III.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

Assessment of a plan of allocation of settlement proceeds under Rule 23 is governed by the same standards of review applicable to the Settlement as a whole - the plan must be fair, reasonable, and adequate. *See In re Lorazepam,* 205 F.R.D. at 381; *Ikon Office Solutions,* 194 F.R.D. at 184.

The objective of a plan of allocation is to provide an equitable basis upon which to

distribute the Net Settlement Fund among eligible Class Members. Here, the proposed Plan of Allocation was developed by Lead Counsel with the assistance of Named Plaintiffs' damages expert, and reflects an assessment of the damages that could have been recovered by the individual Class Members based on when they acquired and disposed of their Fannie Mae securities. The Plan of Allocation is based on customary methods, and will plainly result in a fair distribution of the available proceeds among those Class Members who submit valid claims. *See In re Lorazepam* & *Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *23 ("A plan of distribution is thus sufficient where, as here, there is 'a rough correlation' between the settlement distribution and the relative amounts of damages recoverable by Class Members.") (citation omitted).

The proposed Plan of Allocation, a copy of which is annexed to the Joint Declaration and was posted on the Settlement website, describes how the Net Settlement for the Fund will be allocated among Class Members.  It is well-established that a "reasonable plan may consider the relative strength and values of different categories of claims." *Global Crossing,* 225 F.R.D. at 462. *See also Lucent,* 307 F. Supp. 2d at 649 ("[T]he [Plan of Allocation] is based on the estimated losses of the Class Members attributable to the alleged misstatements.  In addition, no Class Member has objected to the Plan of Allocation. The reaction of the Class further supports approval of the proposed Plan of Allocation. *Id.*

**IV.    THE REQUESTED COUNSEL FEES ARE FAIR, REASONABLE, AND APPROPRIATE UNDER THE CUSTOMARY "PERCENTAGE OF THE RECOVERY" METHOD ADOPTED IN THIS CIRCUIT, AND SHOULD BE AWARDED**

The Supreme Court has recognized that where, as here, class plaintiffs successfully recover a fund for the benefit of class members, the costs of litigation and counsel's efforts should be spread among the fund's beneficiaries. Under this "common fund" doctrine, attorneys who create a common fund to be shared by a Class are entitled to a reasonable award of fees and

expenses from that fund. *Boeing Co.* v. *Van Gemert,* 444 U.S. 472, 478 (1980).  In this Circuit, attorneys' fees in common fund cases are calculated according to a "percentage-of-the-fund method." *Swedish Hosp. Corp.* v. *Shalala,* 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("In sum, we join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases."); *Newbridge Networks,* 1998 U.S. Dist. LEXIS 23238, at *10 ("In this Circuit, attorneys' fees are calculated according to 'a percentage-of-the-fund method.'") (citation omitted). The common fund doctrine is "typically applied in class actions." *Swedish Hospital,* 1 F.3d at 1265. In applying this methodology, courts enjoy "substantial discretion in making reasonable fee determinations," *id.* at 1271, and "[f]ee awards in common fund cases may range from fifteen to forty-five percent." *Vista*, 246 F.R.D. at 364.  Thus, on a percentage basis, Plaintiffs' Counsel's fee request of 33 1/3 % falls within the middle of the range for attorney fee awards approved by the courts in this Circuit.

Although there is no established formula, courts in this Circuit have generally examined the following factors in determining the reasonableness of a fee request calculated as a percentage of a common fund: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of non-payment; (6) the amount of time devoted to the case by plaintiffs counsel; and (7) awards in similar cases. *In re Baan,* 288 F. Supp. 2d at 17 (citing *Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *27). Plaintiffs' Counsel respectfully submit that an examination of these factors here plainly justifies and supports an award of the requested fee.

A. **The Size Of The Fund Created And The Number Of Persons Benefited**

Plaintiffs' Counsel here were able to obtain a $7.25 million all-cash settlement for the benefit of the Class, notwithstanding both (a) the customary risks of litigation of this type, and (b) very real prospect that the Class might obtain no recovery whatsoever had the case continued to trial and verdict for Plaintiffs given Fannie Mae's dire financial condition and the potential ultimate requirement of Congressional action, and Presidential signature, to fund such a verdict. The amount of the Settlement, while admittedly representing less than the estimated maximum recoverable class damages, reflects a significant monetary recovery.

Furthermore, thousands of Class Members will benefit from the Settlement negotiated in this case. With over 8,140 copies of the Notice having been mailed to potential Class Members, there can be no doubt that a significant number of persons will benefit from the Settlement.

B. **The Risk That Counsel Would Be Paid Nothing**

In this case, the risk of non-payment was considerable. Of course, Plaintiffs' Counsel understood from the outset that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of compensation for the significant investment of time, money and effort the case would require. However, in addition to the normal risks associated with undertaking this type of case on a wholly contingent basis, in September 2008, in the midst of the nation's greatest financial crisis since the Great Depression, Fannie Mae's stock price collapsed and it was placed under federal conservatorship. Indeed, as recently as June 6, 2010, a column in *The New York Times* reported that banks that had sold loans to Fannie Mae were required to repurchase those loans if they were deemed to have been extended fraudulently, were deemed predatory, or did not meet Fannie Mae's standards. But during the first quarter of 2010, Fannie Mae's banks owed $1.8 billion for such loans (which amount had not been repaid), up

from $1.1 billion during the first quarter of 2009.  "We expect the amount of our outstanding repurchase and reimbursement requests to remain high throughout 2010, Fannie said in a filing." *Id*.  As noted above, Fannie Mae's stock has been delisted by the New York Stock Exchange. Thus, Fannie Mae's extraordinary financial problems to this day continue to increase, making more unlikely a Class return absent the Settlement.

Plaintiffs' Counsel have not received any payment to date for their efforts in prosecuting the action on behalf of the Class, yet they have incurred expenses of $242,403 and have invested a total of 6,195 hours in the case. *See* Joint Declaration at ¶ 37, and Exhibits D, E, and F thereto. The significant outlay of cash and personal resources by Plaintiffs' Counsel have been completely at risk and wholly dependent upon obtaining a substantial recovery for the Class. Other firms also performed tasks and incurred time and expenses and will be allocated fees and expenses from those awarded by the Court based on the value of their efforts and their relative contribution to the results achieved.

Absent this Settlement, there was a significant risk that the Class Members, as well as their Counsel, would obtain little or no recovery.  Based on the level of risk undertaken, it is well within the range of fairness to award Plaintiffs' Counsel a fee of one-third of the Gross Settlement Fund.  *See Baan,* 288 F. Supp. 2d at 18 (awarding fee of 28% where there was "a substantial risk that Plaintiffs' Counsel would not be paid for their efforts" due to, *inter alia,* the "precarious financial condition" of a company the corporate defendant purchased as well as "the deteriorating state of Baan's directors' and officers' insurance policy").

C.      **The Absence Of Any Objections By Members Of The Class To The Fees Requested By Counsel And The Fact That Named Plaintiffs Support The Fee Request Favor Approval**

As noted above, notwithstanding the fact that over 8,140 copies of the Notice have been mailed to identified and potential Class Members, and that a Summary Notice was published in the national edition of *USA Today* and over the *Business Wire* (Joint Declaration at ¶ 13), and notwithstanding that Class Members were informed in the Notice that Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed one-third of the Gross Settlement Fund plus expenses, and even though Class Members were also advised of their right to object to the fee and expense requests (and further advised that such objections were required to be submitted by the Court-established deadline of July 13, 2010) - to date no Class Member has filed an objection to Counsel's requested fees and expenses.  The lack of objections is compelling evidence that the requested fee is fair and reasonable, and strongly supports the requested award.  *See Newbridge Networks,* 1998 U.S. Dist. LEXIS 23238, at *11 ("[Although] advised of counsel's plan to request as much as one-third of the settlement amount, no class member has objected . . . ."); *Baan,* 288 F. Supp. 2d at 17 (finding "noteworthy" the fact that "only one objection to counsel's application for attorneys' fees has been filed").

D.      **The Complexity And Duration Of The Litigation**

As described in detail in the Joint Declaration, this is a complex ERISA class action.  The Settlement was not reached until after more than six years of litigation, during which time Plaintiffs' Counsel diligently investigated the relevant facts, prepared a highly detailed initial Complaint and Amended Class Action Complaint, successfully defended two motions to dismiss, reviewed hundreds of thousands of pages of documents, conducted six depositions, and were prepared to take six additional depositions.  In addition, throughout these vigorously contested

proceedings, Plaintiffs' Counsel were opposed by defense counsel of the highest caliber, including O'Melveny & Meyers LLP; Zuckerman Spaeder LLP; Bingham McCutchen LLP, Williams & Connolly LLP, and Mayer Brown LLP,.

Although Plaintiffs' Counsel should plainly be rewarded for the considerable time and effort they devoted to the litigation of this complex matter in the face of top-quality opposing counsel, it is equally true that they should not be penalized for entering into the proposed Settlement prior to completion of discovery and trial.   To the contrary, it is respectfully submitted that Plaintiffs' Counsel should be rewarded for successfully negotiating the proposed Settlement when they did, because by entering into the Stipulation *prior to trial* and with insurance proceeds still available to Fannie Mae, the Plaintiffs have been able to assure a substantial all-cash recovery for the benefit of the Class.  *See, e.g., Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *16; *In re Vitamins Antitrust Litig.,* Misc. No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25067, at *63 (D.D.C. Jul. 16, 2001).

### E.    The Amount Of Time Devoted To The Case By Counsel

When Plaintiffs' Counsel undertook this matter over six years ago on a wholly contingent basis, it was with the knowledge that they would likely commit thousands of hours of hard work against some of the best defense lawyers in the country with no assurance of ever obtaining any compensation for those efforts. Plaintiffs' Counsel have not received any payment to date for their efforts in prosecuting the action on behalf of the Class over the last six years.  However, as shown above and in the accompanying declarations, Plaintiffs' Counsel cumulatively invested  a total of 6,195 hours to vigorously litigating this Action. *See* Joint Declaration at ¶ 37 and Exhibits D, E, and F thereto.  The resulting "lodestar" in this Action totals $2,488,233.  *Id.*  It should also be noted that this sum does not include any additional time that Plaintiffs' Counsel will expend in the coming months on Settlement administration.  As discussed further below, the

requested fee also results in no multiplier (or "lodestar multiple").  Obviously, the lack of a multiplier is the bottom of the range of reasonableness.  *See Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *32 ("[M]ultiples ranging up to 'four are frequently awarded in common fund cases when the lodestar method is applied.'").  Given the foregoing, the fee sought is well within commonly awarded fees when considered under a "lodestar crosscheck" analysis, and the low lodestar multiplier provides further strong support for approving the requested fee.

### F.    The Skill And Efficiency Of The Attorneys Involved

The considerable time and labor invested by Plaintiffs' Counsel in this litigation also weighs in favor of approving the fee request. Throughout the litigation, Plaintiffs' Counsel devoted substantial time and effort to obtaining the best possible result for the Class.  Settlement of this action, while the related securities action continues, and while the ultimate fate of Fannie Mae continues to hang in the balance, shows the strategic skill of Plaintiffs' Counsel in obtaining this recovery for the Class.  Plaintiffs' Counsel further respectfully submit that the pleadings they filed reflect the quality and thoroughness of their pre-filing factual investigation, and the quality and thoroughness of their analysis of the relevant legal issues.

Further, as noted above, Defendants here were vigorously represented by nationally prominent law firms with extensive experience in defending ERISA class actions. The ability of Plaintiffs' Counsel to obtain a favorable Settlement for the Class in the face of such formidable legal opposition further reflects the high quality of Lead Counsel's work. *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *62. *See also Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *30 ("'The caliber of opposing counsel was clearly of the highest order and required that counsel for plaintiffs and the Class be capable of providing comparable services.'") (citation omitted).

### G.     Fee Awards In Similar Cases

Lead Counsel seek an award of one-third of the Gross Settlement Fund. This request is reasonable and fully consistent with fee award jurisprudence in this District. *See, e.g., Equal Rights Ctr. v. Wash. Metro. Area Transit Auth.,* 573 F. Supp. 2d 205, 215 n.11 (D.D.C. 2008) ("This court has previously held that reasonable fee awards may range from fifteen [15%] to forty-five [45%] percent . . . ."); *Vista,* 246 F.R.D. at 364 ("'Fee awards in common fund cases may range from fifteen to forty-five percent'"); *Vista Health Plan,* 287 F. Supp. 2d at 68 (awarding slightly more than 25% of the settlement fund as attorneys' fees); *Baan, 288* F. Supp. 2d at 16 (awarding 28% of the gross settlement fund as attorneys' fees);  *Vitamins,* 2001 U.S. Dist. LEXIS 25067, at *68 (awarding attorneys' fee of 33⅓%); *Newbridge Networks,* 1998 U.S. Dist. LEXIS 23238, at *12 (approving fee award of 30%).

## V.     THE REQUESTED FEE IS ALSO FAIR AND REASONABLE UNDER THE LODESTAR METHOD

Although not required to do so in this Circuit, courts sometimes consider counsel's lodestar as a "cross-check" factor in determining the reasonableness of a fee request. *See, e.g., Baan,* 288 F. Supp. 2d at 19-20. Here, the requested fee is especially fair and reasonable when considered from a lodestar approach.  Courts applying the lodestar method determine legal fees by multiplying counsel's customary hourly rate by a multiplier that takes into account a variety of factors, including the difficulty of the case and the benefits provided to the Class. *See Vitamins,* 2001 U.S. Dist. LEXIS 25067, at *30 (citations omitted).  To facilitate such analysis, Plaintiffs' Counsel have submitted declarations detailing the total hours they have devoted to this case and the customary hourly rates they charge for their work on cases of similar complexity. *See* Joint Declaration at Exhibits D to F.

Under the lodestar/multiplier method, courts typically award fees that are a multiple higher than counsel's lodestar to recognize and compensate counsel's having assumed the representation without an assured payment of their lodestar.  Here, Plaintiffs' Counsel are seeking less than their lodestar.  As set forth in the declarations attached as Exhibits D – F to Plaintiffs' Counsel's Joint Declaration, Plaintiffs' Counsel have spent a total of 6,195 hours prosecuting this action, with a resulting lodestar of $2,488,233.  *See* Joint Declaration at ¶ 26. The requested fee amounts to $2,416,667, which is less than Plaintiffs' Counsel's lodestar amount. Numerous courts have noted that even multipliers above 2.0 and ranging up to 4.0 "'are *frequently* awarded in common fund cases when the lodestar method is applied.'" *See, e.g., Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *32 (emphasis added). Conversely, "a multiplier of 2.0 or less falls well within a range that is fair and reasonable." *Baan,* 288 F. Supp. 2d at 19-20. In light of this precedent from this District, the fee requested here is warranted.

## VI.   COUNSEL SHOULD BE REIMBURSED FOR THEIR OUT-OF-POCKET EXPENSES

Lead Counsel also request that the Court grant their application for reimbursement of $242,403 in expenses incurred by Plaintiffs' Counsel in connection with the prosecution of this case.  Courts in the D.C. Circuit award the actual amount of reasonable expenses in addition to a fee award of a reasonable percentage of the common fund. *See, e.g., Baan,* 288 F. Supp. 2d at 17-18, 22. The expenses incurred in litigating this action are summarized in the separate declarations of each participating firm, which are attached as Exhibits to the Joint Declaration. *See also* Joint Declaration at ¶ 45.  The largest portion of the expenses ($147,144) is attributable to access to the electronic data depository, necessarily created to make available the over 25 million pages of documents produced in this and the related actions.  Plaintiffs' Counsel believe

that the expenses are reasonable, particularly given the substantial benefit provided to the Class by the proposed Settlement.  The expenses incurred in this litigation are the types of expenses that counsel would normally directly bill to paying clients in the marketplace and were reasonable and necessary for the prosecution of this lawsuit. *See, e.g., Vitamins,* 2001 U.S. Dist. LEXIS 25067, at *69 ("Courts have routinely awarded expenses for which counsel would normally directly bill their clients.").  Indeed, "the fact that [class counsel] were willing to expend their own money, as an investment whose reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Lorazepam & Clorazepate,* 2003 U.S. Dist. LEXIS 12344, at *33.  For the foregoing reasons, Lead Counsel respectfully request reimbursement for all expenses sought in this application.

## VII.   NAMED PLAINTIFFS SHOULD BE AWARDED CONTRIBUTION FOR THEIR CLASS REPRESENTATION

Named Plaintiffs have expended considerable time and effort in representing the Class by virtue of their review of numerous material responses to depositions and interrogatories, and preparation for and appearing at their depositions.  An award of $7,500 to each of them would fairly compensate them for their efforts.  All of the Named Plaintiffs communicated regularly with Plaintiffs' Counsel as the case developed.  They were sent copies of all material filings and letters describing the case progress, they reviewed these documents as they were received and they frequently discussed them with counsel.

Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case contribution awards to plaintiffs who instituted and prosecuted an action on the theory that there would be no class-wide benefit absent their suit.  Plaintiffs expended substantial effort and significant time prosecuting this action over six years.  The $7,500 sum requested by each

Named Plaintiff is in line with or less than amounts which have been awarded by courts in similar ERISA company stock class actions. *See, e.g.*, *In re Tyco ERISA Litig.*, No. 02-CV-1335 (D.N.H. Nov. 23, 2009) (awarding $15,000); *Graden v. Conexant*, No. 05-CV-695 (D.N.J. Sept. 14, 2009) (awarding $10,000); *In re Cardinal Health, Inc. ERISA Litig.*, No. 04-CV-643 (S.D. Ohio Oct. 24, 2007) (awarding $20,000); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (awarding $15,000 each to the two named plaintiffs); *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976, at **19-21 (E.D. Pa. Dec. 2, 2004) (awarding the named plaintiffs $20,000 each); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving an incentive award of $25,000 in an ERISA action based upon, among other things, the risks the named plaintiff faced and the named plaintiff's reasonable fear of workplace retaliation); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913-14 (S.D. Ohio 2001) (awarding $50,000 to the class representative).

## VIII.  CONCLUSION

For the foregoing reasons, Named Plaintiffs and Plaintiffs' Counsel respectfully request that the Court grant their Motion for Final Approval and enter the proposed Final Judgment, attached to the Motion for Final Approval as Exhibit A: (1) approving the Settlement as fair, reasonable, and adequate; (2) certifying the Class for purposes of the Settlement; (3) awarding Plaintiffs' Counsel attorneys' fees equal to one-third of the Gross Settlement Fund and reimbursement of their expenses in the amount of $242,403; and (4) awarding each Named Plaintiff a case contribution award of $7,500 for his or her representation of the Class.

Dated:  July 7, 2010

**HARWOOD FEFFER LLP**


By:   s/ Samuel K. Rosen
　　　Robert I. Harwood
　　　Samuel K. Rosen
　　　488 Madison Avenue 10022
　　　New York, New York
　　　Telephone:  (212) 935-7400

　　　*Lead Counsel for the ERISA Plaintiffs*

**BARROWAY TOPAZ KESSLER
　MELTZER & CHECK, LLP**
Edward W. Ciolko
280 King of Prussia Road
Radnor, Pennsylvania  19087
Telephone:  (610) 667-7706

*Counsel for ERISA Plaintiffs*